## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

00 JAN 25 PH 4: 21

CLERK-ALBUQUERQUE

**PHILLIP HUMPHRIES,**

        **Plaintiff,**

**vs.**

CIV 0 0        0 0 9 7 LH

**GARY JOHNSON, Governor of New Mexico,**
**ROBERT J. PERRY, Secretary of Corrections,**
**JOHN SHANKS, Director of Adult Prisons,**
**DONNA WILPOLT, Deputy Corrections Secretary,**
**JERRY TAFOYA, Deputy Corrections Secretary,**
**JEFF SERNA, Interstate Compact Coordinator,**

**and**

WILLIAM W. DEATON

**THE WACKENHUT CORPORATION,**
**GUADALUPE COUNTY CORRECTIONAL FACILITY,**
**ELOY MONDRAGON, Former Warden,**

**and**

**RON ANGELONE, Virginia Corrections Director,**
**STAN K. YOUNG, Wallens Ridge State Prison Warden,**

        **Defendants.**

### VERIFIED COMPLAINT FOR VIOLATIONS
### OF CONSTITUTIONAL RIGHTS

      Plaintiff Phillip Humphries presents the following Complaint for declaratory, injunctive, compensatory, and exemplary relief resulting from Defendants' denial of Plaintiff's human, civil, statutory, and constitutional rights, stating as follows:

1.      Plaintiff is **Phillip Humphries**. At the end of August, 1999, Plaintiff was a minimum or medium security prisoner living in "A-Pod" at the Guadalupe County Correctional Facility, the Wackenhut Corporation prison in Santa Rosa, New Mexico. Plaintiff was nearing the end of his sentence on drug charges.

2.      Defendants are the State of New Mexico's Governor **Gary Johnson**; **Robert J. Perry**, Secretary of Corrections; **John Shanks**, Acting Deputy Secretary and Director of Adult Prisons; **Donna Wilpolt**, Deputy Secretary; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, the Interstate Compact Coordinator. In addition, Defendants include the **Wackenhut Corporation** and **Eloy Mondragon,** Former Warden of the **Guadalupe County Correctional Facility,** a Wackenhut Corporation Prison in Santa Rosa, New Mexico. Defendant **Ron Angelone** is the Virginia Corrections Department Director and **Stan K. Young** is the Warden of Wallens Ridge State Prison.

3.      Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States and the State of New Mexico.

4.      On or around September 1, 1999, Defendants, without valid reason or justification, wrongfully transferred Plaintiff and other minimum and medium security prisoners to Wallens Ridge State Prison in Big Stone Gap, Virginia, a Supermax Prison, as punishment for alleged participation in a prison riot.  Plaintiff did not participate in the riot.

5.      Although Defendants have falsely and publicly accused Plaintiff of participating in the riot at Santa Rosa, they have not charged Plaintiff with any misconduct, not given Plaintiff any notice of any charges, and not held any hearing on any charges.

6.      At all times relevant to this Complaint Defendants acted under color of state law; Defendants are sued in both their individual and official capacities.

## FACTUAL ALLEGATIONS

7.      By August, 1999, the provision of correctional services by the Wackenhut Corporation at the Guadalupe County Correctional Facility had broken down and degenerated far beneath any reasonably acceptable standards of correctional management and operations; the classification and disciplinary systems were not functioning and crucial security issues were being ignored. Prison guards were overworked, under-trained and underpaid and political and racial favoritism had corrupted the institution and its management. The prison was built with serious design flaws and errors which also compromised institutional security.

8.      By August 26, 1999, following serious incidents of violence at private prisons, New Mexico Governor Gary Johnson had become concerned about the disparity between public and private corrections facilities.  According to Governor Johnson, prisoners at private prisons who were involved in violent incidents were being sent back to the more desirable State-run prisons, where they had more of the amenities of prison life and their living conditions were more comfortable.

9.    Instead of "rewarding" such prisoners by sending them back to State-run prisons, Governor Johnson announced a new policy to punish prisoners for involvement in prison violence by sending them to prisons out of the State.

10.    On August 27, 1999, Defendants posted a Notice informing inmates that "Any further incidents of violence will result in the transfer of inmates to out-of-state facilities."

11.    On the evening of August 31, 1999, Plaintiff was playing basketball in the Gym when a disturbance broke out around the Gym office. The game abruptly stopped when a prisoner attacked another prisoner with an icepick.

12.    After the victim of the attack was taken for medical attention and the attacker surrendered the prisoners were ordered back to their housing units. A short time later a Corrections Officer entered A-Pod to instruct the prisoners to go into their cells.

13.    An attack on Corrections Officer Ralph Garcia took place behind the locked door in E-Pod. Plaintiff was locked in A-Pod; he did not participate in any way in the attack on the guard or the property damage that followed.

14.    Fearing for his life, Plaintiff ran to the second tier of A-Pod. With smoke filling the Pod, Plaintiff and four other black prisoners decided to stay together in Plaintiff's cell, No. 207.  They put a blanket at the bottom of the door to keep some of the smoke out and huddled together in the cell.

15.    Some time later law enforcement and corrections officers entered A-Pod, handcuffed the prisoners, returned them all to their assigned cells, and ordered them to lie on the floor and stay there.

-4-

16.    The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident."

17.    At about 9 a.m. that morning the prisoners were given large garbage bags and told to put all their personal possessions in the bags. The prisoners were taken to Housing Unit 2, placed in cells, stripped, searched, and left to wait in their boxer shorts.

18.    Even though the cells were very cold, the prisoners were not given blankets or any other clothing.  At about 9 that evening an officer wheeled a laundry cart filled with blankets through the unit and distributed blankets.

19.    At around 1 a.m. Plaintiff was suddenly awakened by about 30 guards dressed in black. They placed Plaintiff, chained around the waist, handcuffed, and with shackles on his ankles, on a bus. Around 3 a.m. a convoy of about 20-vehicles left Santa Rosa for Albuquerque.

20.    Following a wait of several hours in buses on the runway at Kirtland Air Force Base, Plaintiff and the other Santa Rosa prisoners were loaded by federal marshals into a 727 for a three-hour trip. Upon their arrival at a small Tennessee airport the prisoners were forced to wait for hours without water in hot vans with windows sealed shut.

21.    On September 3, 1999, Corrections Secretary Perry announced:

>     . . . . the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.

According to Correction Secretary Perry's press release:

> The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia.

Perry announced that:

> The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

22.     Defendants selected or approved the selection of Plaintiff and other prisoners for transfer and Supermax imprisonment in Virginia without regard for whether or not they had participated in violence or rioting at Santa Rosa.

23.     The State of Virginia had recently opened two new Supermax Prisons, Wallens Ridge and Red Onion. At the time of the transfer of New Mexico prisoners the twin Virginia Supermax prisons were far under their capacity of 2400 prisoners. Wallens Ridge and Red Onion are intended to confine, control, and punish the worst and most violent prisoners in the country.

24.     Until they arrived at Wallens Ridge State Prison Plaintiff and the other New Mexico prisoners had no idea where they were being sent.

25.     The prisoners were kept in vans near the Wallens Ridge Prison doors for over four hours. They were not allowed to speak. Guards shouted taunts and threats. Before he

-6-

entered the prison Plaintiff was given a painful electrical shock by a guard wielding an electroshock gun.

26.     At Wallens Ridge Plaintiff was placed in a Segregation Unit. Defendants kept Plaintiff in a small cell for more than 23 hours a day and denied any meaningful programs or activities, denied opportunity for exercise, denied access to books or law library, denied telephone calls and other human contacts, unreasonably and cruelly threatened Plaintiff, and in many respects subjected him to cruel, harsh, and unusual conditions of confinement which were far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

27.     At Wallens Ridge Plaintiff was subjected to extraordinarily harsh and degrading treatment, including racial taunts and insults, coarse epithets, unreasonably restrictive and oppressive living conditions, and continual threats from electroshock guns, chemical sprays, firearms, shotguns, police dogs and other methods of control and discipline.

28.     At Wallens Ridge Plaintiff was subjected to intensive punishment, stimulus deprivation, strict control, and behavioral modification procedures which were improper, dangerous, and entirely inappropriate for Plaintiff and others like him.

29.     During his first five weeks at Wallens Ridge Plaintiff was never allowed out of his cell without first being stripped, searched, shackled, chained, and handcuffed. During his time at Wallens Ridge Plaintiff was stripped and searched repeatedly.

30.     On or around November 10, 1999, Plaintiff was returned to New Mexico because he had completed his sentence.

31.     To this date Defendants have not given Plaintiff any reason for sending him to Wallens Ridge and confining him in the Segregation Unit.

32.     For the nearly five-day trip from Virginia to New Mexico Defendants chained Plaintiff to other prisoners and kept him restrained and shackled throughout the long trip.

33.     Phillip Humphries has served in the United States Air Force. He is an intelligent, literate black man who was in prison because he was caught using cocaine. He has struggled while imprisoned to maintain his health, dignity, stability, and personal identity.

34.     At the time of his transfer to Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity, and he was not a troublemaker of any sort. At the prison in Santa Rosa Plaintiff had worked as a barber.

35.     Defendants have entered into compacts and contracts with Wackenhut and the Virginia Department of Corrections to effect and govern the transfer and imprisonment of Plaintiff and other prisoners.

36.     On September 3, 1999, New Mexico Corrections Secretary Robert Perry and Virginia Corrections Director Ron Angelone entered into the Memorandum of Understanding Between the Virginia Department of Corrections and the New Mexico Department of Corrections allowing the transfer of the New Mexico prisoners to Wallens Ridge State Prison.

## COUNT 1

## VIOLATIONS OF THE RIGHT TO DUE PROCESS

37.    After the inmate disturbance at Santa Rosa Defendants selected Plaintiff and others for transfer to the prison in Virginia without conducting any investigation, without stating any valid reason or justification, and without holding any hearing.

38.    The compelled transfer to Virginia was effected secretly, starting in the middle of the night, without any notice and without Plaintiff's knowledge. He was forced to ride on buses, vans, and an airplane without knowledge of their destination. Defendants kept Plaintiff in chains, shackles, and handcuffs throughout the trip.

39.    Defendants' acts compelling Plaintiff's transport to Virginia in chains and shackles, placement in a super maximum confinement prison, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant deprivations of Plaintiff's rights and interests.

40.    Between September 3, 1999, and November 10, 1999, Plaintiff suffered undeserved and unreasonable punishment and personal abuse at Wallens Ridge State Prison.

41.    Defendants knew or should have known that Plaintiff was a non-violent person, nearing the end of his prison sentence, who had not been involved in the incident at Santa Rosa and who had done nothing to deserve being sent to a super-maximum security institution, yet they transferred him and required him to submit to such extreme and oppressive conditions of confinement nonetheless.

42.     Defendants knew or should have known that they were wrongfully punishing Plaintiff for something he didn't do, sending him defenseless into a monstrously oppressive institution with conditions of confinement and inmate management practices far more demeaning and confining than any encountered in any New Mexico prison, even those prisons housing New Mexico's most dangerous and violent criminals.

43.     Defendants' failure to hold a hearing prior to the transfer and their continued failure to re-classify or justify confining Plaintiff as a maximum security prisoner throughout his confinement at Wallens Ridge constitute procedural and substantive due process denials which are shocking and offensive to the concept of ordered liberty and justice.

44.     Defendants' acts and omissions and their treatment of Plaintiff described herein violate commonly accepted norms of human, social, personal, and official conduct and behavior, and constitute human rights violations and atrocities which are truly unconscionable.

45.     During the time he was at Wallens Ridge Plaintiff repeatedly but unsuccess-fully attempted to invoke the prison grievance process. He repeatedly but futilely questioned why he was there, why he was placed in the Segregation Unit, and why he was being subjected to such restrictive confinement. In one such grievance Plaintiff attempted to secure some "recreation" time out of his small cell. His request for three hours a week out of his cell was denied! (EXHIBIT 1).

46.     Plaintiff has a liberty interest which Defendants have denied or seriously compromised by their acts and omissions.

47.     Defendants have violated Plaintiff's right to procedural and substantive due process of law and are liable for damages caused by their denial of Plaintiff's fundamental right to due process of law protected by the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 18, of the New Mexico Constitution.

**COUNT 2**

**VIOLATION OF INTERSTATE COMPACT**

48.     The preceding allegations and claims are adopted.

49.     Defendants have entered into an interstate compact and a contract and understanding with the State of Virginia providing for and allowing the transfer of Plaintiff and other prisoners from New Mexico to Virginia. Plaintiff is a third-party beneficiary of the compacts and contracts.

50.     The compact provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner and shall be cared for and treated equally with such similar inmates of the receiving state as may be confined in the same institution."

51.     The compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

52.     Defendants have entered into the compact, complex contracts, contract amendments, and other arrangements both formal and informal between and among themselves, including a Memorandum of Understanding.  (EXHIBIT 2).

53.     Defendants have breached the provisions of the interstate compact by failing to treat Plaintiff and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

54.     Plaintiff is a third party beneficiary who has been damaged as a result of Defendants' breach of the interstate compact.  Defendants are liable to Plaintiff for damages sustained as a proximate result of their conduct.

**COUNT 3**

**VIOLATIONS OF THE RIGHT TO BE FREE
OF UNREASONABLE SEARCHES AND SEIZURES**

55.     The preceding allegations and claims are adopted.

56.     The Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution prohibits unreasonable searches and seizures.

57.     Throughout the time he was transported to and from Wallens Ridge State Prison and while he was at Wallens Ridge State Prison, Plaintiff was forced to submit to continual strip searches and other body searches. He was repeatedly and harshly restrained, shackled, handcuffed, and required to endure long periods of distress, discomfort and pain.

58.    For example, Defendants subjected Plaintiff to numerous strip searches, especially while in the Segregation Unit, where prisoners are searched every time they leave their cell. A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.
>
> This procedure will be followed any time a segregation inmate leaves his cell for any reason. There will be no exceptions to this procedure.

(EXHIBIT 3).

59.    By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably removed and denied the residuum of privacy and personal rights retained by Plaintiff following his conviction and sentencing.

60.    Defendants' treatment of Plaintiff was entirely without probable cause, reason, or justification, but was nonetheless intended to and did degrade, humiliate, oppress, control, and damage Plaintiff both physically and mentally.

61.    Defendants are liable for their violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted, and unjustified searches and seizures.

## COUNT 4

### VIOLATIONS OF THE RIGHT TO BE FREE
### OF CRUEL AND UNUSUAL PUNISHMENT

62.    The preceding allegations and claims are adopted.

63.    At the time he was transferred to Wallens Ridge State Prison, Plaintiff was nearing the end of his sentence of confinement.  He is a non-violent offender, imprisoned as a consequence of his use of cocaine.

64.    By subjecting Plaintiff to the most harsh and extreme conditions of confinement and by the related mistreatment of Plaintiff described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable, reasonable, desirable or necessary punishment.

65.    Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel and unusual punishment on Plaintiff in violation of the Eighth Amendment to the United States Constitution and Article II, Section 13, of the New Mexico Constitution.

## COUNT 5

### VIOLATIONS OF THE RIGHT TO BE FREE
### OF THE INCIDENTS OF SLAVERY

66.    The preceding allegations and claims are adopted.

67.    As a 36-year old African-American, Plaintiff is keenly aware of the history of oppression and slavery of black people in America.

-14-

68.     Defendants have involuntarily transferred Plaintiff from his ordinary term of imprisonment in New Mexico, transported him in chains and shackles, without knowledge or explanation and without a hearing to a Super Maximum Security prison in Virginia, and repeatedly and unnecessarily restrained, searched and threatened Plaintiff with injury from electroshock weapons, chemical weapons, shotguns, police dogs, and racist guards.

69.     Defendants have severely limited Plaintiff's movement, associations, and activities, and have mistreated Plaintiff and subjected him to unusually cruel and unreasonable conditions of confinement.

70.     Defendants have physically and mentally controlled and attempted to enslave Plaintiff in a manner that reflects and represents the badges and incidents of slavery.

71.     Defendants are liable to Plaintiff for their violations of his rights to be free of the incidents, appearances, and fact of slavery and involuntary servitude which are protected by the Thirteenth Amendment to the United States Constitution.

## COUNT 6

### CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

72.     The preceding allegations and claims are adopted.

73.     Defendants have acted individually and together with each other and other government officials and employees to plan, cause, and effect the transfer of Plaintiff and other prisoners to Wallens Ridge State Prison.

-15-

74.    Defendants all knew or should have known that Plaintiff had nothing to do with the killing of the guard or the disturbance that followed. They also knew, or should have known, that sending Plaintiff and other minimum and medium security prisoners like him to a Supermax penitentiary would inflict unreasonable and serious emotional harm and that it would cause unreasonable and unnecessary pain and suffering.

75.    Nonetheless, Defendants met, conversed, planned, and arranged between and among themselves and with subordinates, and devised, planned, agreed upon, and executed the transfer and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

76.    Defendants acted among and between themselves with gross indifference and disregard for Plaintiff's rights and interests and they are accordingly liable to Plaintiff for damages proximately resulting from their acts and omissions.

## COUNT 7

### EXEMPLARY AND PUNITIVE DAMAGES

77.    The preceding allegations and claims are adopted.

78.    The conditions of confinement at Wallens Ridge State Prison constituted a highly atypical and significant hardship for Plaintiff and Plaintiff has suffered physical, psychological and emotional damage as a proximate result of his experience.

79.    Defendants' conduct described herein was willful, wanton, deliberate, malicious, and was intended to punish Plaintiff and others like him for acts he did not

-16-

commit. Defendants have acted with deliberate and utter indifference for the rights of Plaintiff and others like him; their conduct in this case is shocking and egregious.

80.     Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent Defendants and others from committing such extreme and constitutionally offensive acts in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the award of the following relief:

A.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process of law, including but not limited to damages for pain and suffering and emotional distress.

B.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures, cruel and unusual punishments, and the incidents of slavery.

C.     Declaratory and compensatory relief for damages resulting from violations of the interstate compact and other agreements between the parties intended to protect and preserve the rights and interests of Plaintiff and others similarly situated.

D.     An Injunctive Order requiring Defendants to provide counseling, therapy, and treatment to restore Plaintiff to the physical and psychological condition he was in prior to the occurrences described herein and to treat him for both the immediate and the long-term effects of his experience.

E.     Exemplary and Punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least One Million Dollars.

F.     Costs of this action and reasonable attorneys' fees.

G.     Such other and further relief as the Court deems just, proper, and necessary.


Respectfully submitted,


_____

Paul Livingston
Attorney for Phillip Humphries
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410

99-00-4451

# REQUEST FOR SERVICES/COMPLAINT FORM
## FOR USE IN C-1 ONLY

( ) REQUEST FOR SERVICES/INFORMATION
( ) COMPLAINT

Place a check mark next to the individual or department to whom you wish to respond to your request/complaint. Forward the form through the institutional mail.

Inmate Name __Phillip Humphries_____ Number __273608__ Cell __C 101__

This request is directed to:

( ) Warden                               ( ) A Building Supervisor        ( ) Medical
( ) Assistant Warden of Operations       ( ) B Building Supervisor        ( ) Dentist
( ) Assistant Warden of Programs         ( ) C Building Supervisor        ( ) Psychologist
(X) Chief of Security                    ( ) D Building Supervisor        ( ) Laundry Manager
( ) Treatment Program Supervisor         ( ) Personal Property            ( ) Food Services
( ) Institutional Investigator           ( ) Safety Officer               ( ) Records Manager
( ) Disciplinary Hearings Officer        ( ) Institutional Ombudsman      ( ) Business Manager
( ) Mailroom                             ( ) Maintenance
( ) Counselor (name)_____
( ) Other (name)_____

Explain the reason for your request/complaint in the space provided. Do not add attachments.
**Please Print Clearly. Only one concern or issue per request. Be specific.**

The reason for this complaint is to assure
that you know that I feel as if I'm
being punished by not being allowed
to take part in Recreation.

Inmate Signature __Phillip Humphries__

## Staff Response

Inmate Interviewed ( ) Yes (X) No

Action Taken:

You are given every chance
for recreation as all inmates
If you refuse that is your
choice

Staff Signature __LT. C.S.__ Date __10-15-99__

Plaintiff's
**EXHIBIT 1**

## REGULAR GRIEVANCE FORM

LOG # _____

| Humphries | Phillip | 273608 | C ▄ | 101 |
|---|---|---|---|---|
| LAST NAME | FIRST | NUMBER | BUILDING | CELL # |

**WHAT IS YOUR COMPLAINT?    (PROVIDE INFORMATION FROM THE INFORMAL PROCESS. WHEN DID YOU SEE THEM. WHAT WAS DONE [?]**

The reason for this grievance is simple, I've been here at Wallen Ridge over three weeks. Regular exercise is a very important part in being and staying healthy, not only physically also mentally. I have been mistreated, at least as far as your policy is concerned.

**WHAT ACTION DO YOU WANT TAKEN?** I would appreciate it if you would allow me to have 3 days a week of 1 hour out of cell time. Thank you.

**GRIEVANTS SIGNATURE** Phillip Humphries          **DATE SUBMITTED** _____

WARDEN/SUPERINTENDENTS OFFICE
DATE RECEIVED

INSTRUCTIONS FOR FILING. YOU ARE REQUIRED PER DIVISION OPERATING PROCEDURE 866 INMATE GRIEVANCE PROCEDURE TO ATTEMPT TO RESOLVE YOUR COMPLAINT IN GOOD FAITH PRIOR TO FILING A REGULAR GRIEVANCE. THE INSTITUTIONAL IMPLEMENTATION MEMORANDUM
866 DETAILS THE INFORMAL PROCESS TO USE. YOU MUST SUBMIT YOU GRIEVANCE WITHIN 30 DAYS FROM THE DATE OF OCCURRENCE OR DISCOVERY OF INCIDENT. ONLY ONE ISSUE PER GRIEVANCE WILL BE ADDRESSED. WRITE YOUR ISSUE ONLY IN THE SPACE PROVIDED ON THE GRIEVANCE FORM. PERFERABLY IN INK. REGULAR GRIEVANCES ARE SUBMITTED THROUGH THE INSTITUTIONAL MAIL TO THE WARDEN/SUPERINTENDENTS OFFICE AND A RECEIPT ISSUED WITHIN 2 WORKING DAYS FROM RECEIVED DATE IF THE GRIEVANCE IS NOT RETURNED DURING INTAKE.

INTAKE. GRIEVANCES SHOULD BE ACCEPTED FOR LOGGING UNLESS RETURNED FOR THE FOLLOWING REASON (S):

_____ NON-GRIEVABLE. THIS ISSUE HAS BEEN DEFINED AS NON-GRIEVABLE IN ACCORDANCE WITH DIVISION OPERATION PROCEDURE 866.

_____ DISCIPLINARY PROCEDURE. YOU MAY APPEAL HEARING DECISIONS. PENALITIES. AND/OR PROCEDURAL ERRORS UNDER THE PROVISIONS IN DIVISION OPERATING PROCEDURE 861. "INMATE DISCIPLINE"

_____ MATTERS BEYOND THE CONTROL OF THE DEPARTMENT OF CORRECTIONS.

_____ LIMITED. YOU HAVE BEEN LIMITED BY THE WARDEN/SUPERINTENDENT.

_____ EXPIRED FILING PERIOD. GRIEVANCE ARE TO BE FILED WITHIN 30 CALENDAR DAYS FROM DATE OF OCCURRENCE/INCIDENT. OR DISCOVERY OF THE OCCURRENCE/INCIDENT. EXCEPT IN INSTANCE: 1) BEYOND THE INMATE'S CONTROL OR. 2) WHERE A MORE RESTRICTIVE TIME FRAME HAS BEEN ESTABLISHED IN DIVISION PROCEDURES TO PREVENT LOSS OF REMEDY OR THE ISSUE FROM BECOMING MOOT.

_____ REPETITIVE. THIS ISSUE HAS BEEN GRIEVED PREVIOUSLY IN GRIEVANCE # _____

_____ INQUIRY ON BEHALF OF OTHER INMATES.

_____ GROUP COMPLAINTS OR PETETIONS. GRIEVANCES ARE TO BE SUBMITTED BY INDIVIDUALS.

_____ VULGAR/INSOLENT OR THREATENING LANGUAGE. YOU MAY BE CHARGED IN ACCORDANCE WITH THE PROVISIONS IN DIVISION OPERATING PROCEDURE 861. "INMATE DISCIPLINE." THE UNACCEPTABLE LANGUAGE HAS BEEN HIGHLIGHTED. TO RECEIVE CONSIDERATION YOU ARE INSTRUCTED TO REWRITE AND SUBMIT YOUR GRIEVANCE PROMPTLY WITHOUT THE INAPPROPRIATE LANGUAGE.

_____ PHOTOCOPY/CARBON COPY. YOU MUST SUBMIT THE ORIGINAL GRIEVANCE FOR RESPONSE AND APPEAL

_____ GRIEVANCE FILED REGARDING ANOTHER INSTITUTION. THIS GRIEVANCE IS BEING RETURNED TO YOU FOR YOU TO SUBMIT TO THE APPRPRIATE INSTITUTION.

___✓___ INFORMAL PROCEDURE. YOU HAVE NOT USED THE INFORMAL PROCESS TO RESOLVE YOU COMPLAINT.

_____ INSUFFICIENT INFORMATION. YOU NEED TO PROVIDE THE FOLLOWING INFORMATION BEFORE THE GRIEVANCE CAN BE PROCESSED: _Submit informal receive_ GRIEVANCE DEPAR_ _a response before submitting_ GRIEVANCE _

INSTITUTIONAL OMBUDSMAN/
GRIEVANCE COORDINATOR: _____ DATE _OCT 0 1 1999_

REGIONAL REVIEW OF INTAKE (WITHIN 5 WORKING DAYS OF RECEIPT):

_____ THE INTAKE DECISION IS BEING UPHELD IN ACCORDANCE WITH THE CRITERIA IN DIVISION PROCEDURE 866 "INMATE GRIEVANCE PROCEDURE"

_____ THE GRIEVANCE MEETS THE CRITERIA FOR INTAKE AND IS BEING RETURNED TO THE WARDEN/SUPERINTENDENT FOR LOGGING.

REGIONAL OMBUDSMAN: _____   DATE: _____

WITHDRAWL OF GRIEVANCE

I WISH TO VOLUNTARILY WITHDRAWL THIS GRIEVANCE. I UNDERSTAND THAT BY WITHDRAWING THIS GRIEVANCE. THERE WILL BE NO FURTHER ACTION ON THIS ISSUE NOR WILL I BE ABLE TO FILE ANY OTHER GRIEVANCE IN THE FUTURE ON THIS ISSUE.

INMATE SIGNATURE: _____   DATE: _____

SEP 03 1999 09:45 FR - ECTORS OFFICE    804 674 3509 TO    25827000S    P.02/03

MEMORANDUM OF UNDERSTANDING BETWEEN THE VIRGINIA DEPARTMENT OF
CORRECTIONS AND THE NEW MEXICO DEPARTMENT OF CORRECTIONS

DATE: **9-3-99**

It is hereby directed that up to one hundred twenty five (125) inmates, as identified on the attached transfer memorandum, who are New Mexico Department of Corrections inmates that are currently incarcerated at the Guadalupe County Correctional Facility, be transferred to the custody of the correctional system of the State of Virginia, pursuant to the provisions of the Interstate Corrections compact as provided under Sections 53.1-216 and 53.1-217 of the *Code of Virginia* and Sections 31-5-17 and 31-5-18 of the New Mexico Statutes Annotated 1978, and under the existing Contract between the State of New Mexico and the State of Virginia For The Implementation of the Interstate Corrections Compact dated December 7, 1982 (specifically Section 27 of the Contract). These inmates are to be delivered to the custody of Virginia at the following location: The Wallens Ridge State Prison located near Big Stone Gap, Virginia.

The parties agree that for the purposes of this Memorandum that the Commonwealth of Virginia shall defend, at its expense, any claim arising from the conditions of confinement in Virginia Department of Corrections facilities and all excessive force and failure to protect claims brought by any inmates housed in any Virginia Department of Corrections facility; that the State of New Mexico shall be responsible for defending, at its expense, all legal proceedings, including but not limited to, actions brought against Virginia Officials relating to a New Mexico Inmate's conviction or sentence, any action arising out of the transfer per se of a New Mexico Inmate to a Virginia facility; and any suit brought against any New Mexico defendant; and that the New Mexico Corrections Department and Virginia Department  of Corrections agree to fully cooperate with each other in defense of any action brought by a New Mexico Inmate or pertaining to a New Mexico Inmate.

Pursuant to Section 27 of the existing Contract, New Mexico shall pay the Commonwealth of Virginia a per diem of $64.00 per day per inmate. All other terms and conditions of the referenced existing Contract between the State of New Mexico and the State of Virginia shall apply. The term of this transfer is for up to one year, with the understanding that the transfer may last less than one year.

_____ (name)
ROBERT J. PERRY

_____ (title)
CABINET SECRETARY
New Mexico Corrections Department

_____ (name)
Ron Angelone

_____ (title)
Director
Virginia Department of Corrections

Subscribed and sworn before me, a Notary Public, in and for the State of Virginia, this _3rd_ day of _September_ 1999.

My Commission Expires:

*Virginia Interstate Compact 9.99*
*Page 1*

**Plaintiff's**
# EXHIBIT 2



*MEMORANDUM OF UNDERSTANDING BETWEEN*
*THE VIRGINIA DEPARTMENT OF CORRECTIONS AND*
*THE NEW MEXICO DEPARTMENT OF CORRECTIONS*

_Charlene J. Davis_
Notary Public

03-31-2002

Subscribed and sworn before me, a Notary Public, in and for the State of New Mexico, this
2nd day of _September_, 1999.

My Commission Expires:

_9-29-2001_

_Barbara H. Murphy_
Notary Public

**Custody Transfer Certification:**

Custody of inmates received:

_____        _____        _____
(Print Name)                              Signature                                    Date

Witnessed by New Mexico Transporting Official:

_____        _____        _____
(Print Name)                              Signature                                    Date

Distribution:
Original to Unit Manager, Absconder and Extradition Unit; then to CCR
Institutional Criminal Record
Compact Coordinator
Designated Reception Center (when receiving inmates)
W#9, TR

*Virginia Interstate Compact 9.99*
*Page 2*

**WALLENS RIDGE
STATE PRISON**

# Memo

**To:**     INMATE POPULATION

**From:**   MAJOR T. YATES

**Date:**   11/12/99

**Re:**     STRIP SEARCH PROCEDURE

---

　　LATELY THERE HAS BEEN SOME CONFUSION ABOUT THE STRIP SEARCH PROCEDURE HERE AT WALLENS RIDGE STATE PRISON. THIS MEMO WILL CLEAR UP ANY QUESTIONS YOU MAY HAVE ABOUT THIS PROCEDURE.

　　ANY TIME A STRIP SEARCH IS CONDUCTED THE INMATE WILL BE REQUIRED TO STRIP OFF ALL HIS CLOTHING, TURN AROUND SLOWLY, PUT HIS HANDS ON HIS BUTTOCKS, SPREAD HIS BUTTOCKS, SQUAT TO THE GROUND WHILE BUTTOCKS IS STILL SPREAD, AND COUGH HARD TWICE.

　　THIS PROCEDURE WILL BE FOLLOWED ANY TIME A SEGREGATION INMATE LEAVES HIS CELL FOR ANY REASON. THERE WILL BE NO EXCEPTIONS TO THIS PROCEDURE.

MAJOR T. YATES

Plaintiff's
# EXHIBIT 3

## VERIFICATION

I, Phillip Humphries, being duly sworn upon my oath, do hereby state and affirm that I have read the foregoing complaint, that I understand the complaint, and that the facts set out therein are true and correct, to the best of my knowledge.



PHILLIP HUMPHRIES

COUNTY OF BERNALILLO        )
                           ) ss
STATE OF NEW MEXICO        )

Sworn and Subscribed to before me this **24ᵗʰ** day of January, 2000, by Phillip Humphries.

OFFICIAL SEAL
**PAUL LIVINGSTON**
Notary Public
State of New Mexico
My Appointment Expires **6-1-03**

NOTARY PUBLIC

My Commission Expires:  **June 1, 2003**